**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| DIAELDIN OSMAN, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) C.A.N.: 2-21-CV-00525-RAH |
| | ) |
| ALABAMA STATE UNIVERSITY AND | ) |
| KAMAL HINGORANI, | ) |
| | ) |
| DEFENDANTS. | ) |

**REPLY BRIEF IN SUPPORT OF ALABAMA STATE UNIVERSITY AND KAMAL HINGORANI'S MOTION FOR SUMMARY JUDGMENT**

**COME NOW** the Defendants Alabama State University ("ASU") and Dr. Kamal Hingorani ("Hingorani") pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and hereby file this Reply Brief in Support of its Motion for Summary Judgment filed contemporaneously with additional evidentiary submissions. ASU and Hingorani request that this Court grant summary judgment in their favor against all of the Plaintiff Dr. Diaeldin Osman's ("Osman") claims against them for the reasons set forth herein.

**I.  OSMAN'S STATEMENT OF THE FACTS DOES NOT CREATE A GENUINE DISPUTE OF MATERIAL FACT**

Osman's almost twenty-eight (28) pages of "facts" is nothing more than opinions and an extension of his argument section and does not set forth facts that are supported by the record. Further, the facts to be examined in this case relate to the denial of Osman's promotion as he has set forth in his Second Amended Complaint. Osman does not have claims related to his hiring, his inability to apply for tenure and/or the payment of immigration fees. Additionally, this is not a disparate impact case and the numbers of African, Muslim and/or black faculty members within ASU's College of Business Administration or the Accounting and Finance Department is

1

irrelevant. The plaintiff's arguments and recitation of facts regarding these matters are irrelevant. ASU and Hingorani will address the arguments made by Osman in his statement of facts.

### A. THERE WERE NO DISCREPANCIES IN OSMAN'S EMPLOYMENT NOTICE

Osman claims that there discrepancies in his contract related to his years of teaching credits. (Doc. 66, pp. 11-12). It was not Hingorani's testimony that a discussion was actually had regarding granting Osman credit for his years of teaching at Alcorn, it was instead Hingorani's testimony that he did not recall such a conversation taking place. (Doc. 62-2, Hingorani Depo., pp. 91-92, ln. 23-4). Further, it was Hingorani's testimony that Dr. Dave Thompson, Osman's department chair and the person who made the recommendation to hire Osman, put forth a salary computation worksheet reflecting zero years of teaching credit. (Doc. 62-2, Hingorani Depo., p. 92, ln. 11-16). That worksheet was simply approved by Hingorani. (Doc. 62-2, Hingorani Depo., p. 92, ln. 11-16). As such, Osman's employment notice reflected that he was being hired with a probationary status of zero years. (Doc. 62-1, Notice of Employment). Osman executed this document and accepted the terms and conditions as proposed by ASU. (62-1, Notice of Employment).

### B. OSMAN DID NOT MAKE AN INTERNAL COMPLAINT REGARDING ANY ALLEGED DISCRIMINATION UNTIL MARCH 31, 2021

Osman claims that he verbalized concerns about Hingorani and being treated differently than non-African faculty and cites Thompson's deposition to support this fact beginning in 2020. (Doc. 66, p. 14). However, Thompson's testimony was that he remembered Osman saying that he was being treated differently but it was not because he was from Africa (there was no time given for when these statements were made):

> Q. Do you recall Dr. Osman telling you that he felt he was being treated differently than the non-African staff or faculty?
> A. Yes.

2

> Q. And do you recall Dr. Osman saying that he believed he was being treated differently because of his religion?
> A. No.
> Q. Do you recall Dr. Osman saying that he believed he was being treated differently because he was black?
> A. No.
> *Q. So as far as you can recall, Dr. Osman related it -- related what he believed to be the differential treatment as him being from Africa?*
> *A.  No.*

(Doc. 65-1, Thompson Depo., p. 24, ln. 7-22). Additionally, the concerns that Osman raised with Dr. Carl S. Pettis, Provost, regarding Hingorani related to communication, not discrimination. (Doc. 62-9, Grievance File at ASU INIT DISC000324). ASU requires that complaints regarding harassment and discrimination be submitted in writing to the Office of Human Resources. (Doc. 65-5, Carr Depo., pp. 17-19, ln. 19-14).  The Office of Human Resources did not receive a complaint from Osman regarding discrimination until March 31, 2021.  (Doc. 62-9, Grievance File at ASU INIT DISC000315).

### C. THE RECORD CLEARLY SHOWS THAT HINGORANI REPORTED THE COMMITTEE MEMBERS' ALLEGATIONS OF SELF-PLAGIARISM

Osman attempts to paint Hingorani as liar as it relates to the allegations of plagiarism.  It was Hingorani's testimony that the committee members accused Osman of self-plagiarism and he reported that in a confidential communication to Pettis.  The letter from Hingorani to Pettis shows this to be true.  (Doc. 62-7, Hingorani Recommendation Letter at ASU INIT DISC000186). Additionally, Dr. Thomas Ngo-Ye, a member of the promotion review committee, testified that he discovered the self-plagiarism and that the matter was discussed during the meeting of the promotion review committee.  (DX 25, Ngo-Ye Deposition, pp. 20-22, ln. 21-16).

### D. ASU HAS NOT PROVIDED ALTERNATIVE OR SHIFTING REASONS FOR NON-PROMOTION

3

It is undisputed that Pettis is the decision-maker as it relates to promotion. It was Pettis' testimony that he did not recommend Osman because he did not have the requisite number of years of teaching experience. This is consistent with ASU's responses to Osman's discovery requests. ASU answered as follows as to why Osman was not recommended for promotion: "ASU objects to this request as it is vague and overly broad. Notwithstanding said objection, the Plaintiff's name was not advanced to the Alabama State University's Board of Trustees because he did not meet the requirements as set forth by the ASU Faculty Handbook." (Doc. 65-15., ASU's Responses to Discovery at p. 8). When asked for the specific policies related to this decision, ASU referenced the ASU Faculty Handbook Sections 3.2.2, 3.2.3 and 3.5. (Doc. 65-15, ASU's Responses to Discovery at pp. 9-10). Pettis was identified as a person responding to the discovery requests. (Doc. 65-15, ASU's Responses to Discovery at p. 7). Pettis was deposed as ASU's corporate representative. (Doc. 62-3, Pettis Depo., p. 16, ln. 16-23). He testified that he denied Osman's request for promotion because he lacked the required number of years for teaching experience. (Doc. 62-3, Pettis Depo., p. 57, ln. 10-21). When questioned about the location of that requirement, Pettis took Osman's counsel to the ASU Faculty Handbook's Section 3.2.3 regarding the requirements for an Associate Professor. (Doc. 62-3, Pettis Depo., pp. 57-58, ln. 18-12).

### E. KISER'S DEPOSITION FROM ANOTHER CASE SHOULD NOT BE CONSIDERED AS RELEVANT EVIDENCE IN THE INSTANT CASE

Osman uses the deposition of Dr. Sara Kiser to support allegations that Hingorani made racial statements about ASU students and that the COBA faculty is "heavily Asian." (Doc. 66 at pp. 25-26). Rule 32 of the Federal Rules of Civil Procedure provides that a deposition taken in a previous matter can only be used if the following criteria is met: "[a] deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving

4

the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action." The use of Kiser's deposition does not satisfy Rule 32 and it should not be considered as evidence in the instant case. The same parties are not involved. Kiser's deposition was taken in the matter of <u>Janel Bell-Haynes v. Alabama State University</u>, C.A.N. 2:21-CV-00018-ECM-JTA (M.D. Ala.). Kiser was deposed as a non-party witness, not a corporate representative for ASU, nor was she represented by counsel for ASU. (Doc. 65-8, Kiser Depo, pp. 9-10, ln. 12-2). The subject matter in the <u>Bell-Haynes</u> case involves gender discrimination, not racial discrimination. Further, Osman had an opportunity to depose Kiser as a witness in his case, but chose not to do so. Counsel for Osman requested contact information for Kiser and ASU supplied that information. (DX 26, Emails re Scheduling of Deposition).

Notwithstanding should the Court consider Kiser's deposition from the <u>Bell-Haynes</u> case as evidence, Hingorani's deposition wherein he denies the allegations made by Kiser should also be considered as evidence. When questioned in his deposition, Hingorani denied making such claims about getting rid of professors as well as a racially charged statements about students.

> Q. Did you and Dr. Bell-Haynes ever discuss the ability of the black students to learn?
> A. We are an HBCU. That can never be discussed when I'm the dean and when I'm around. We serve the African American population. I have been working here for more than twenty-seven years. I don't understand the context of discussion.
> Q. Did you ever discuss the difference of opinion in how you should instruct the black students?
> A. No.
> Q. Did you ever make a comment that some of these students will just end up being security guards somewhere?
> A. No. You know, when I'm the dean, I would like my students to get jobs that commensurate with the degree that we award them. So, you know, if you are -- if you're looking at, you know, working as a security guard, the issue is with us. Why would I say anything like that?

DX 27, Hingorani <u>Bell-Haynes</u> Depo., pp. 76-77, ln. 8-6.

> Q. Did you ever tell anyone that you wanted to get rid of everyone up on the third floor?
> A. I told you that it's impossible to recruit faculty. So I'm very possessive of what faculty I have. Under no circumstance would I tell or make a statement that I want everybody to be rid of. I want -- you know, I told you I have three Ph.D.s who retired who still work for me. So anybody who worked and get experience, I will be the last person to let anybody go. And I have not -- you know, I've got so many temporary people working for me. I work through their strengths and I don't look at their weaknesses. People have their own strengths. And every faculty member is very important to me. I would never even dream of firing an entire block of faculty.

DX 27, Hingorani Bell-Haynes Depo., pp. 76-77, ln. 8-6.

## II.     OSMAN FAILED TO MEET HIS BURDEN OF ESTABLISHING THAT HE EXHAUSTED HIS ADMINISTRATIVE REMEDIES

### A. ASU DID NOT WAIVE ITS EXHAUSTION DEFENSE

ASU did not waive its exhaustion defense and was not required to present it in a motion to dismiss.  In its Answer to Osman's Second Amended Complaint, ASU pled the failure to exhaust administrative remedies as an affirmative defense.  (Doc. Osman has argues but does not point to any rule which requires ASU to have presented its exhaustion argument in a motion to dismiss as opposed to in a motion for summary judgment.  While a motion to dismiss may be used to present such a defense, this Court has held that a motion to dismiss for the failure to exhaust administrative remedies must not decide the claim on the merits and "the parties had a sufficient opportunity to develop the record" Davis v. Ala. DOT, Civil Action No. 2:16-cv-583-MHT-WC, 2017 U.S. Dist. LEXIS 122763, at *20 n.11 (M.D. Ala. Aug. 2, 2017).  ASU's arguments in its motion for summary judgment regarding Osman's failure to exhaust his administrative remedies involve both procedural and factual elements.  The parties had not engaged in any discovery at the time that the plaintiff filed his Second Amended Complaint.  ASU did conduct discovery regarding the matter of exhaustion by requesting records from the EEOC and producing the same to the Plaintiff. During Osman's deposition, counsel for ASU asked questions about the timing of his knowledge

6

of the denial of his promotion. Additionally, the EEOC Charge File for the Osman's Second EEOC Charge from which ASU used as an exhibit was not available when plaintiff filed his Second Amended Complaint as the Second EEOC Charge was filed just days prior to the filing of the Second Amended Complaint.  ASU's argument regarding the plaintiff's failure to exhaust his administrative remedies is proper before this Court at this stage of summary judgment.

### B. OSMAN'S FAILURE TO FILE A TIMELY CHARGE IS FATAL TO HIS CLAIMS AGAINST ASU

Again, filing a charge of discrimination within 180 days of the alleged discrimination is an absolute and is not discretionary.  "For our purposes, the critical sentence of the charge filing provision is: 'A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." § 2000e-5(e)(1) (emphasis added). The operative terms are "shall," "after . . . occurred," and "unlawful employment practice." ***"Shall" makes the act of filing a charge within the specified time period mandatory***.  AMTRAK v. Morgan, 536 U.S. 101, 109, 122 S. Ct. 2061, 2070 (2002) (emphasis added).

> Given the importance of the exhaustion requirement, a plaintiff's civil complaint under Title VII "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. at 1280. In determining whether a complaint falls within the scope of the EEOC charge, we consider whether the complaint is "like or related to, or grew out of, the allegations contained in [the] EEOC charge." Id. Judicial claims that merely "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint are permissible; but a judicial complaint may not assert "allegations of new acts of discrimination." Id. at 1279-80. We have also said that courts should avoid strict interpretation of the scope of the EEOC charge and avoid dismissing Title VII claims based merely on procedural technicalities. See id. at 1280.

Ortiz v. Waste Mgmt., Inc., 808 F. App'x 1010, 1014 (11th Cir. 2020) (quoting Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004).  This "like or related to" exception must still involve a timely filed and properly exhausted Charge.  Osman's unexhausted claim of

7

promotion is similar to the unexhausted claim of termination filed by the plaintiff in Powell v. Birmingham Heart Clinic, P.C., No. 2:19-cv-00309-MHH, 2021 U.S. Dist. LEXIS 173834, at *1 (N.D. Ala. Sep. 13, 2021).

>Ms. Powell's Title VII discriminatory and retaliatory discharge claims fail as a matter of law because she did not exhaust those claims administratively. Generally, before filing a lawsuit in federal court, a Title VII plaintiff must file a timely administrative charge with the EEOC. Duble v. FedEx Ground Package Sys., Inc., 572 Fed. Appx. 889, 892 (11th Cir. 2014). There is a narrow exception to the general rule for Title VII retaliation claims. When a Title VII plaintiff asserts a retaliation claim after she files a Title VII lawsuit based on a properly exhausted discrimination claim, then the plaintiff may proceed with her retaliation claim without filing a new EEOC charge to exhaust the claim. ***If there is no pending Title VII claim in a federal court action "to which the retaliation claim may attach," then a plaintiff may not pursue an unexhausted retaliation claim.*** Duble, 572 Fed. Appx. at 892-93 (citing Gupta v. E. Tex. State Univ., 654 F.2d 411, 413 (5th Cir. 1981)) (holding that "***the district court has ancillary jurisdiction to hear such a [retaliation] claim when it grows out an administrative charge that is properly before the court***").
>
>Here, Ms. Powell filed an administrative charge with the EEOC on May 25, 2018, ***approximately four months before BHC terminated her***. (Doc. 1-1). Ms. Powell identified as the general reasons for her charge national origin discrimination and retaliation. (Doc. 1-1, p. 3).3 Ms. Powell alleged specifically that BHC discriminated against her in her work assignments in that she was given "additional translating duties not assigned to other employees" and that BHC retaliated against her by writing her up for overlooking patients after she complained internally for not being paid for her translating responsibilities. (Doc. 1-1, p. 3). Before she filed her May 25, 2018 EEOC charge of discrimination, Ms. Powell had received written disciplinary action warnings on May 1 and May 22, 2018. (Doc. 47-2, p. 59).
>
>After Ms. Powell filed her EEOC charge, BHC issued another written warning to her on September 27, 2018 and terminated her on October 1, 2018. (Doc. 47-1, p. 118). ***In this action, she alleges that her termination was discriminatory and retaliatory, but she did not amend her EEOC charge or file a new one to exhaust a claim regarding her termination after BHC fired her***. (Doc. 25, p. 5, ¶ 25). ***Because Ms. Powell did not file her lawsuit against BHC until February of 2019, about four months after her termination, there was no federal action to which her claim concerning her termination could attach. Consequently, Ms. Powell's claims for discrimination and retaliation concerning her September 27, 2018 write-up and October 1, 2018 her termination are not properly before the Court because she did not exhaust those claims administratively.***

Powell v. Birmingham Heart Clinic, P.C., No. 2:19-cv-00309-MHH, 2021 U.S. Dist. LEXIS 173834, at *14-16 (N.D. Ala. Sep. 13, 2021). Here, Osman filed his first Charge on May 7, 2021. (Doc. 62-17, May 7, 2021 EEOC Charge). On that same day, ASU's Office of Academic Affairs sent a letter to Osman informing him that his name was not advance to the ASU Board of Trustees for promotion. (Doc. 62-12, May 7, 2021 Letter re Promotion). Osman's first Charge, however, did not allege that he was denied promotion. Osman, like the plaintiff in Powell, never filed an amended Charge or a new Charge to exhaust his claim(s) of discrimination regarding the actual denial of promotion. Osman's second Charge alleges that he was retaliated against for filing the first Charge. (Doc 62-20, November 9, 2021 EEOC Charge). Arguably, these claims for retaliation are not properly before the Court as the claim regarding promotion was not properly exhausted. Further still, ASU maintains its argument that Osman's second Charge was untimely and relies on the evidence as previously identified in its motion to dismiss. The plaintiff has the burden of proving that he timely filed his Charge. Xingzhong Shi v. Montgomery, 679 F. App'x 828, 831 (11th Cir. 2017) (quoting Jackson v. Seaboard Coast Line R. Co., 678 F.2d 992, 1004-10 (11th Cir. 1982)). Osman has failed to do so in this case.

### III. ASU ARGUED AGAINST ALL OF OSMAN'S CLAIMS ON THE MERITS

Osman states that ASU did not argue against his race discrimination claim on the merits. ASU did in fact argue against the claim in Section II of its motion for summary judgment. ASU fashioned its argument based upon the claim actually made by Osman in his Second Amended Complaint. Osman has never claimed to be of any particular race in either his Second Amended Complaint or his EEOC Charges. Although Osman has a count labeled "Race Discrimination," the count speaks to race in the form of national origin or rather African ancestry. The United States Census Bureau indicates that persons of African ancestry may be White or Black. (DX 28, "About

9

the Topic of Race," U.S. Census Bureau, March 1, 2022, https://www.census.gov/topics/population/race/about.html). Persons of Northern Africa are classified by the Census as White. (DX 28, "About the Topic of Race," U.S. Census Bureau, March 1, 2022, https://www.census.gov/topics/population/race/about.html). The Sudan is a country located in Northern Africa. When questioned in his deposition about his race, Osman first responded that he was "Black African" but then changed to "Canadian African" noting his Canadian citizenship and again his African ancestry. (Doc. 62-15, p. 132, ln. 4-9; Doc. 52). Osman has never alleged that there are any characteristics of his African ancestry that carry some "immutable characteristic[s]" of any particular race. See EEOC v. Catastrophe Mgmt. Sols., 852 F.3d 1018, 1021-22 (11th Cir. 2016). Nonetheless, as Osman has noted in his response to ASU's motion for summary judgment, Courts have held that race, ethnicity and national origin often overlap and are at times indistinguishable. See Fitzpatrick v. Koch Foods of Ala., LLC, No. 2:19-cv-553-JTA, 2022 U.S. Dist. LEXIS 25802, at *11 (M.D. Ala. Feb. 14, 2022). As such, ASU addressed his race discrimination claim using the same framework and evidence as the same as his national origin discrimination claim.

**IV.   OSMAN'S CLAIMS FOR DISCRIMINATION FAIL WHETHER USING A BURDEN SHIFTING ANALYIS OR A MOSAIC ANALYSIS**

Osman argues that the *McDonnell-Douglas* burden shifting analysis is inappropriate "because the evidence supports Osman's assertion that the discrimination was based on multiple protected characteristics." (Doc. 66, p. 42, n. 10). Osman does not assert that he has pled a mixed-motive case, but cites the case of Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1241-42 (11th Cir. 2016) which held that the *McDonnell-Douglas* burden shifting analysis should not be used for mixed-motive cases. ASU does not concede that Osman has pled a mixed-motive theory of

10

discrimination. The first time that Osman has mentioned "mixed-motive" is in his response to summary judgment. See Fonte v. Lee Mem'l'l Health Sys., No. 20-13240, 2021 U.S. App. LEXIS 34256, at *12 (11th Cir. Nov. 18, 2021) (holding that the plaintiff did not plead mixed motive by simply using the phrase "motivating factor"). Osman attempts to use a mosaic analysis to create a *prima facie* case of discrimination, but Osman's claims of discrimination are subject to summary judgment under either analysis.

### A. OSMAN DID NOT ESTABLISH THAT A SIMILARLY-SITUATED EMPLOYEE HAD BEEN TREATED DIFFERENTLY THAN HIM IN PROMOTION

The precedent of the 11th Circuit is clear that when the *McDonnell-Douglas* burden shifting analysis is used the plaintiff "***must demonstrate*** that she and her proffered comparators were '*similarly situated in all material respects*.'" Lewis v. City of Union City, 918 F.3d 1213, 1218 (11th Cir. 2019) (emphasis added). For purposes of promotion, a similarly-situated employee is one who was in the same department and reviewed by substantially the same committee. See Martin v. Auburn Univ., 908 F. Supp. 2d 1259, 1267-68 (M.D. Ala. 2012). Osman discusses employment situations involving other faculty members but these faculty members are not similarly-situated for the purposes of promotion review.

The most similarly-situated employee to Osman as ASU established in its motion for summary judgment is Dr. Kim, a Korean Asian faculty member in Accounting and Finance, who went up for tenure during the 2020-2021 application cycle. (Doc, 62- 7. February 7, 2021 Email Thread). Kim was not treated more favorably than Osman. Although Kim was being considered for tenure, he was reviewed by the same committee. (Doc. Doc. 62-2, Hingorani Depo., pp. 115-16, ln. 18-14; Doc. 62- 7. February 7, 2021 Email Thread). Hingorani asked Kakar research Kim's scholarly publications just as he did for Osman. (Doc. 62-10, Kakar February 23, 2021 Email;

11

Doc. 62-15, Osman Depo., p. 50, ln. 5-21). Although Kakar requested to be recused from the college tenure and promotion review committee, Hingorani made Kakar serve on the committees for that academic year, not just on Osman's committee. (Doc. 62-2, pp. 113-16, ln. 17-14). Kim was denied tenure during that same cycle that Osman was denied promotion. (Doc. 62-2, Hingorani Depo., p. 76, ln. 18-20; pp. 111-12, ln. 7-3). Osman makes reference to Kim subsequently going up for tenure a third time and being granted tenure; however, Kim is also example of a faculty member who has previous years of teaching experience at other institutions and was still hired with zero years of creditable teaching experience. (Doc. 62-2, Hingorani Depo., pp. 76-77, ln. 22-9).

### B. OSMAN CANNOT ESTABLISH PRETEXT IN ASU'S LEGITIMATE, NON-DISCRIMINATORY REASONS

ASU articulated legitimate, non-discriminatory reasons for the denial of Osman's promotion, he did not have the requisite number of years to be eligible for promotion and he included an article for review that went against standards of academic integrity. Those reasons do not create issues of material fact but rather create a burden for Osman to meet these reasons head on to survive summary judgment.

> The plaintiff must then prove, by a preponderance of the evidence, that the legitimate reason proffered was a mere pretext for discrimination. Id. "[A] reason is not pretext for discrimination '*unless it is shown both that the reason was false, and that discrimination was the real reason*.'" Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting Brooks v. Cty. Comm'n of Jefferson Cty., 446 F.3d 1160, 1163 (11th Cir. 2006)). The employee must rebut the reason "head on" and "cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc); see also Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007) (explaining that, where more than one legitimate reason is given, the plaintiff must rebut each one). *At the summary judgment stage, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them*

*unworthy of credence*." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (alteration in original) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1312 (11th Cir. 2018) (emphasis added). The employer may [make employment decisions] for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. Megill v. Board of Regents, 5 Cir.1976, 541 F.2d 1073, 1077; Sullivan v. Boorstin, 1980, D.D.C., 484 F. Supp. 836, 842. 'While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve.' Loeb v. Textron, Inc., 1 Cir.1979, 600 F.2d 1003, 1012 n. 6." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984).

It is undisputed that Osman's Notice of Employment indicated that he had zero years of creditable teaching experience upon hire. (Doc. 62-1, Notice of Employment). It is further undisputed that the ASU Faculty Handbook requires that the faculty member have five years of creditable teaching experience with three years at the level of Assistant Professor at the time that a promotion to Associate Professor becomes effective. (Doc. 62-4, Faculty Handbook at ASU INIT DISC 000043). Osman argues that he should have been granted additional years when he was hired but that is not a claim currently before the Court. More importantly, that was not a decision to be made at the time of promotion but rather a decision that is made upon initial hire and prior to signing the Notice of Employment.[1] (Doc. 62-3, Pettis Depo., p. 59, ln. 2-7; pp. 59-

---

[1] It should be noted that when Hingorani made recommendations that Ngo-Ye be credited with years of teaching experience, he was in the capacity of Chair of the Department of Management Information Systems, not the Dean of the College of Business. (Doc. 65-19 at p. 3 showing an August 2015 hire date for Ngo-Ye and DX 25, Ngo-Ye Depo., pp. 13-14, ln. 22-2). The recommendations originate with the department and are ultimately approved by the Provost. (Doc. 62-3, Pettis Depo., pp. 76-77, ln. 21-4).

y

60, ln. 23-2; pp. 76-77, ln. 21-4).  At the time that Pettis determined that Osman was ineligible for promotion, it was verified that he was not granted any additional years of creditable teaching experience upon hire.  (Doc. 62-3, Pettis Depo., pp. 75-76, ln. 13-20).  At the time of Osman's application for promotion, he only had two years of creditable teaching experience. (Doc. 62-1, Notice of Employment; Doc. 62-24, 2020-2021 Salary Computation Worksheet).  Osman's ineligibility for promotion served as both the reason why he was not qualified and as one of ASU's legitimate, non-discriminatory reasons for the denial of promotion under the *McDonnell-Douglas* analysis.  It also serves as the true reason for the denial of promotion under the mosaic analysis.  Should the Court determine that Osman has properly asserted a mixed-motive theory, this reasons serves as the reasons why ASU would have reached the same decision absent any alleged discriminatory motive.

Although it was not Pettis' primary reason for ASU's denial of promotion, there is evidence that Osman's self-plagiarized was a concern during his promotion review.  Osman does not dispute that he self-plagiarized articles that he submitted for promotion review. (Doc. 62-15, Osman Depo., p. 103, ln. 17-20).  Instead, Osman argues in response to ASU's motion for summary judgment, the level of importance that should have been placed on articles.  Osman simply quarrels with ASU's decisions but has not met his burden of proving that ASU's reasons are both false and that discrimination is the true reason.

### C. OSMAN HAS NOT ESTABLISHED A CLEAR AND CONVINCING MOSAIC OF INTENTIONAL DISCRIMINATION

To survive a motion for summary judgment using the mosaic evidence analysis "[a] triable issue of fact exists 'if the record, viewed in a light most favorable to the plaintiff, presents a ***convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker***.' " Sims v. MVM, Inc., 704 F.3d 1327, 1333 (11th Cir. 2013)

14

(emphasis added). There is no convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by Pettis when he made the decision that Osman was not eligible for promotion. Further there are no allegations of any racial, religious or national origin bias on the part of Pettis.

Additionally, although Osman focuses on alleged actions and statements made by Hingorani who was not the decision-maker these allegations do not establish a convincing mosaic to infer intentional discrimination by Hingorani[2]. Such allegations are made about Hingorani do not draw an inference of discrimination in his recommendation which would defeat ASU's motion for summary judgment. Instead these allegations equate to Osman's opinions or his disagreement with actions taken or not take by Hingorani. Because there is no evidence which would lead to an inference of discrimination on the part of Hingorani, Osman attempts to bring in the deposition of Kiser for the sole purpose of inserting an allegation that Hingorani made derogatory statements about black students. The 11th Circuit has held that "[s]uch remarks are probative if they illustrate the decision-maker's state of mind at the time that he made the challenged employment decision. Id. (discussing pretext). On the other hand, stray remarks that are "isolated and unrelated to the challenged employment decision" are insufficient in this respect. See Rojas v. Florida, 285 F.3d 1339, 1342—43 (11th Cir. 2002) (supervisor's statement that another employee did not deserve her job because she was a woman was not sufficient to show pretext)." Aristyld v. City of Lauderhill, 543 F. App'x 905, 908 (11th Cir. 2013). For instance in the "mixed-motive" case cited

---

[2] Any alleged discriminatory bias cannot be imputed to Pettis as it is clear that he made his own independent decision regarding Osman's recommendation for promotion. Pettis' reason for denial which served as ASU's reasons was that Osman was not eligible for promotion for the lack of creditable years of teaching experience. This was not even a reason raised by the promotion review committee or by Hingorani. See Anterio v. City of High Springs Fla., 762 F. App'x 891, 899 (11th Cir. 2019) (holding that a decision-maker who conducts his own investigation cannot be imputed with the animus of a bias supervisor and citing Pennington v. City of Huntsville, 261 F.3d 1262, 1270-71 (11th Cir. 2001).).

by Osman in his response, the Court found that the statements made by the decision-makers demonstrated a discriminatory preference in hiring decisions:

> Quigg offers the following statements by Nesmith, Morgan, and Hiers as evidence of discrimination: (1) Nesmith's statement to a school parent that "it is time to put a man in there"; (2) Morgan's and Nesmith's recommendation to Quigg that she hire a tough "hatchet man" to serve as assistant superintendent; (3) Morgan's statement to Quigg that she should consider a male assistant superintendent because it is important to achieve gender balance in the school administration; and (4) the comment by Hiers shortly after the renewal vote that she voted against Quigg because Quigg "needed a strong male to work under her to handle problems, someone who could get tough."
> These statements indicate that Nesmith, Morgan, and Hiers preferred men—or, at the least, individuals with masculine characteristics—for positions within the office of the superintendent.

Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1241-42 (11th Cir. 2016). Although Kiser's deposition should not be used as evidence in this case, it does not serve to establish a clear and convincing mosaic of intentional discrimination on the part of Hingorani is a nothing more than a stray remark, unrelated to the promotion review process.

Osman's arguments regarding suspicious timing and ambiguous statements still do not create a clear and convincing mosaic. Even using the mosaic standard, Osman has to do more than argue with the decisions or actions made by ASU and present evidence that such decisions and actions are evidence of true discrimination. "In the convincing mosaic analysis, '[a] plaintiff can show pretext by: (i) casting sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered reasons were not what actually motivated its conduct, (ii) showing that the employer's articulated reason is false and that the false reason hid discrimination, or (iii) establishing that the employer has failed to clearly articulate and follow its formal policies.' Lewis, 934 F.3d at 1186. She must do more than arguing that the employer's reasons are false; she must establish that discrimination was the real reason for

16

her termination." McCreight v. AuburnBank, No. 3:19-cv-865-RAH-SMD, 2022 U.S. Dist. LEXIS 119657, at *17 (M.D. Ala. July 7, 2022). Osman's arguments regarding suspicious timing and ambiguous statements are nothing more than his unsupported opinions. See Worthington v. Troy Univ., No. 2:21-cv-220-ECM, 2022 U.S. Dist. LEXIS 157080, at *24 (M.D. Ala. Aug. 31, 2022). The plaintiff's opinion does not create a clear and convincing mosaic.

## V. OSMAN HAS NOT PRESENTED ANY EVIDENCE THAT THE OTHER ACTIONS THAT HE COMPLAINS OF ARE ADVERSE EMPLOYMENT ACTIONS

ASU argued that Osman's other complaint such as not being recognized and not receiving certain committee assignments do not rise to the level of adverse employment actions. Osman suffered no tangible harm by not being recognized in an email or not being assigned to the committee of his choice. See Davis v. Town of Lake Park, 245 F.3d 1232, 1244-45 (11th Cir. 2001). Osman's argument that these actions have somehow harmed him professionally is disingenuine given the fact that Osman obtained (and worked) a position of higher rank and higher pay while he was still employed at ASU. (Doc. 62-15, Osman Depo., p. 25, ln. 4-23; p. 31, ln. 21-23). Osman also makes complaints that Hingorani was rude or would not communicate with him. It is well-settled that Title VII does not serve as a civility code in the workplace. See Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (quoting Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999)).

## VI. ASU MAINTAINS ITS ARGUMENTS MADE REGARDING OSMAN'S CLAIMS OF RETALIATION

ASU stands by its previous arguments made regarding Osman's retaliation claims. Specially, ASU has argued that there is no causal connection between any protected activity and the denial of promotion; the other alleged employment actions do not constitute adverse employment actions; and ASU had legitimate non-retaliatory reasons for the denial of promotion and for the other

actions taken. Further, the reply made by ASU regarding its legitimate, non-discriminatory reasons and the lack of a mosaic evidence for the denial of promotion also applies to retaliation. Moreover, Osman's attempt to argue that there is a clear and convincing mosaic of retaliation fails because Osman has not presented any evidence which shows that the promotion decision was made by Pettis with an intent to retaliate against Osman for any reason.

### VII.  HINGORANI MAINTAINS HIS ARGUMENT THAT HE IS ENTITLED TO SUMMARY JUDGMENT

Hingorani stands by his previous arguments made that he is entitled to Eleventh Amendment immunity in the claims brought against him in his official capacity. Hingorani re-asserts that he is entitled to qualified immunity against the claims brought against him in his individual capacity as he has not violated any clearly established law and was at all times acting within the scope of his employment. Osman has not presented any evidence which establishes that Hingorani was not acting within the scope of his employment. "Once a government official establishes that he was performing a discretionary function, a plaintiff must satisfy a two-pronged inquiry to defeat a qualified immunity defense. See Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (quoting Andujar v. Rodriguez, 486 F.3d 1199, 1202 (11th Cir. 2007)). The first prong asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]" Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). The second prong asks whether the violation of the federal right was "clearly established" at the time of the violation. Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)." Delee v. City of Lanett, No. 3:20-cv-763-ECM, 2023 U.S. Dist. LEXIS 183, at *19-20 (M.D. Ala. Jan. 3, 2023). Additionally, Osman failed to establish that Hingorani violated any clearly established law. While discrimination is clearly prohibited, Osman has to show that the law was so clearly established that Hingorani would have known that his

particular actions in recommending promotion and/or making committee assignments and recognizing faculty members constituted discrimination.  See Wilson v. Sec'y, Dep't of Corr., 54 F.4th 652 (11th Cir. 2022).  The claims against Hingorani also fail on the merits for the same reasons that they fail against ASU.

**WHEREFORE, PREMISES CONSIDERED**  ASU and Hingorani respectfully request that summary judgment be granted in their favor against all of Osman's claims against them.

Respectfully Submitted,


/s/ Ramadanah M. Salaam-Jones
**KENNETH L. THOMAS (THO043)**
**RAMADANAH M. SALAAM-JONES (SAL026)**
*Attorneys for the Alabama State University and Dr. Hingorani*

**OF COUNSEL:**
Kenneth L. Thomas, Esq.
Ramadanah S. Jones, Esq.
Office of the General Counsel
**ALABAMA STATE UNIVERSITY**
P.O. Drawer 271
Montgomery, Alabama 36101-0271
(334) 229-1465 (phone)
kthomas@alasu.edu
rsjones@alasu.edu


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by electronic mail on this the 6th  day of January, 2023.

Leslie Ann Palmer
**Palmer Law, LLC**
104 23rd Street South
Suite 100
Birmingham, AL 35233
205-285-3050
Email: leslie@palmerlegalservices.com

Heather Newsom Leonard
**Heather Leonard, PC**
2105 Devereux Circle; Suite 111
Birmingham, AL 35242
205-977-5421
Fax: 205-278-1400
Email: heather@heatherleonardpc.com

/s/ Ramadanah M. Salaam-Jones
**OF COUNSEL**